UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HARRY F.,[1]

                        Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

DECISION AND ORDER

1:20-CV-0648 CJS

---

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion (ECF No. 13) for judgment on the pleadings and Defendant's cross-motion (ECF No. 14) for the same relief. For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

STANDARDS OF LAW

The Commissioner decides applications for SSI benefits using a five-step sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.[2] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

Colvin v. Berryhill, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); see also, Barnaby v. Berryhill, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing Zabala v. Astrue, 595 F.3d 402,

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." Bushey v. Berryhill, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); see also, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of

3

the evidence, but the deferential standard of review prevents us from reweighing it."); see also, Riordan v. Barnhart, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a de novo determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to address the errors alleged by Plaintiff.

The administrative hearing before the Administrative Law Judge ("ALJ") was held on February 1, 2019, at which time Plaintiff was forty-eight years of age. Tr. 27, 34. Plaintiff initially indicated that he lived just with his brother, though he later indicated that he shared domestic duties with a girlfriend. Tr. 36-37, 51, 55.

Plaintiff never completed high school, and there are conflicting statements in the record as to whether he completed his GED. Tr. 35. Plaintiff has no significant work history, and he spent seventeen years in prison, after which he had four parole violations, two of which were related to drug usage, Tr. 54-55. Plaintiff failed to complete post-prison drug treatment programs. Tr. 37. Plaintiff stated that since being released from prison he "tr[ies] to do odd jobs." Tr. 37. Plaintiff most-recently worked in a restaurant for two months, though he stated he "couldn't do it," both because it was difficult for him to stand for long periods and because he had headaches. Tr. 37. However, Plaintiff is not receiving any ongoing medical treatment for the physical conditions which he claimed prevented him from working. When asked if he also worked as a barber (based on records indicating that he was), Plaintiff initially denied doing so,

4

though he later admitted that he cut hair as an "odd job." Tr. 38.

At the hearing, Plaintiff claimed to be disabled due to a combination of left-eye blindness, "emotional distress including depression and anxiety, and [ ] chronic headaches and back pain related to a motor vehicle accident [("MVA")]." Tr. 32. Plaintiff's counsel admitted that the medical support for those claims was quite limited, involving, for example, "complaints of headaches" during an emergency room ("ER") visit following the MVA. Tr. 33. Counsel acknowledged that the evidence involving Plaintiff's alleged mental impairments was even "less clear," and that Plaintiff had received mental health treatment primarily, if not exclusively, only while incarcerated. Tr. 33. Counsel admitted that there were no treating records from any primary care physician after 2014, since Plaintiff had not sought such treatment. Tr. 54. (What medical records there are come primarily from emergency room visits and drug-treatment evaluations). Counsel also indicated that he was not submitting any medical opinion evidence, and he agreed that Plaintiff did not meet any listing. Tr. 34.

During the hearing, Plaintiff stated that he gets dizzy when he stands up too quickly, and that he has headaches on the left side of his head which he thinks might be migraines. Tr. 39. Plaintiff also stated that he has a "back problem" that bothers him when he bends forward. Tr. 39-40. Plaintiff stated that he could stand for one-to-two hours at a time, after which his head, back or knee might start bothering him. Tr. 41. Plaintiff stated that due to back pain, he can walk "about a quarter mile." Tr. 41. Again, although Plaintiff has not sought medical treatment for his alleged back problem, he indicated that he intends to see a chiropractor. Tr. 53. Plaintiff stated that he gets headaches "mostly every morning," as well as when he sleeps too long or stands up too quickly, and that the headaches last for hours unless he takes medication. Tr. 42.

5

In 2016, Plaintiff told an evaluator that he enjoyed cooking and playing sports including basketball. Tr. 55.

Plaintiff also claims to have post-traumatic stress disorder ("PTSD") from being incarcerated. Tr. 46.[3] Plaintiff stated that he was given mental health medications on one occasion, but he does not take them because he does not think they help him. Tr. 46; *see also, id.* at 52 ("I'm not interested in taking any medication."). Plaintiff stated that he is "mostly anxious" from having been incarcerated. Tr. 47. When asked to give an example of this, Plaintiff stated that he feels anxious when having to do things such as wait in line. Tr. 48.

Plaintiff stated that he is able to control his mood, but that he does have verbal altercations with people, which he attributes to having been incarcerated. Tr. 49-50. In that regard, Plaintiff volunteered that he is physically able to work, but that he would have difficulty getting along with people due to having been incarcerated:

> I [am] able to get a job, but with my – with the way I'm going through right now, I don't think I could be able to work around people, or be around people. I don't think – that's going to be an issue. And me lifting stuff and me moving around quickly, with my eye, I don't think – that would be an issue. It's like a job would be easy, I could work. I probably could maintain a job for a long period of time but I have to have a back brace. I have to be able to get along with people, you know, throughout being – similar to being around people that I don't know, that I've been around for a long time. It's like an issue that I always dealing with, from now on, since I came home [from prison]. . . . I don't know whether it's because I was incarcerated for a long time, especially I can't be around people for less – for more than like 20 minutes without argument or something transpiring and happening, and me asking questions. People feel that I ask too many questions.

Tr. 57.

---

[3] He claims that "jail doctor" told him that everyone who has been incarcerated has PTSD. Tr. 46.

Notably, Plaintiff failed to attend consultative medical and mental examinations that had been arranged by the Commissioner, and offered no explanation for such failure. Plaintiff did attend a consultative examination with an ophthalmologist. However, the doctor suspected that Plaintiff might have been malingering with regard to testing of vision in his functioning right eye.

On March 6, 2019, the ALJ issued a decision finding that Plaintiff was not disabled at any time since January 22, 2017, the date he filed the application for SSI benefits. At the first step of the five-step sequential evaluation the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 22, 2017. At the second step, the ALJ found that Plaintiff has severe impairments consisting of "left eye blindness, anxiety [and] depression." Tr. 14. At the third step, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. Prior to reaching the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work (with some postural and environmental limitations) that could be performed with occasional use of depth perception and peripheral visual acuity, provided that the work involved simple routine tasks, that could be learned after a short demonstration or within 30 days, and required only occasional interaction with the public and co-workers. Tr. 17. At the fourth step of the sequential evaluation, the ALJ found that Plaintiff had no past work, and at the fifth step, the ALJ found, based on testimony from a vocational expert ("VE"), that Plaintiff could perform several jobs in the national economy. Tr. 20-21.

In connection with these findings, the ALJ noted that Plaintiff had received some medical treatment involving his back and head following a 2016 motor vehicle accident ("MVA"), but that the objective test findings were generally normal. For example, CT scans of Plaintiff's spine

were normal, as was a 2017 physical examination. Tr. 14. The ALJ further noted that Plaintiff did not subsequently follow up for any treatment of his back. Similarly, while Plaintiff reported having headaches while in the ER following the 2016 MVA, CT scans of Plaintiff's head were normal, as were the neurological findings reported by treatment providers. Tr. 14-15.

Additionally, while Plaintiff alluded to having a low IQ score and claimed to have had difficulty filling out the SSI application, the ALJ observed that treatment notes showed "no evidence of a severe intellectual deficit." Tr. 15.

Regarding Plaintiffs alleged anxiety and depression, the ALJ also noted that Plaintiff's impairments in this area seemed to be "largely situational to his periods of incarceration," and that Plaintiff did not seek mental health treatment when not in jail. Tr. 19. The ALJ further observed that treatment notes reported that Plaintiff was "pleasant, calm, and cooperative with normal behavior, mood and affect." TR 16.

Regarding Plaintiff's blindness in his left eye, which occurred when he was fourteen years old, the ALJ noted that Plaintiff seemed to have adapted well, as he was able to perform a wide variety of activities requiring vision, including reading, playing video games, playing basketball and cutting hair professionally. Tr. 19. The ALJ also noted that the consultative ophthalmologist, who was attempting to gauge Plaintiff's vision in his right eye, suspected that Plaintiff was malingering. Tr. 19.

The ALJ noted that the only opinion evidence came from the Commissioner's agency review physicians, who concluded that there was insufficient evidence to evaluate the claim, and from the consultative ophthalmologist who confirmed that Plaintiff was blind in the left eye and may have been malingering with regard to his right eye. Tr. 19-20. The ALJ indicated that he

gave the agency review physicians' opinion "little weight" because they offered no opinions concerning functional limitations, and because later-developed evidence was sufficient to gauge the severity of Plaintiff's impairments.  The ALJ gave the ophthalmologist's opinion significant weight since it was consistent with the other evidence of record. Tr. 20.   The ALJ further stated:

> I note that there are no other opinions in this record because no treating doctor submitted them and the claimant failed to attend the consultative psychiatric and internal medicine examinations.  Pursuant to 20 CFR 416.918, if one applying for benefits fails to appear for a consultative examination without good reason, the Administration may find him not disabled.  In this case, the claimant offered no reason whatsoever for failing to appear at the consultative examinations that were scheduled for his benefit[.]

Tr. 20.

Nevertheless, the ALJ indicated that despite the paucity of evidence to support Plaintiff's claims, he was including the limitations contained in the RFC finding after giving Plaintiff the benefit of the doubt on certain points. See, e.g., Tr. 19 ("[Plaintiff's] allegations of dizziness with standing and walking are not supported by the record . . . .   However, I have limited the claimant to no climbing of ladders, frequent balancing, no exposure to hazards[.]"); see also, id. at p. 16 ("There is little other evidence regarding [Plaintiff's alleged inability to interact with others.] However, viewing the evidence in the light most-favorable to the claimant, I find that he has moderate limitations I this area and have limited him to occasional interaction with the public and co-workers.").

In this action, Plaintiff contends that remand for further administrative proceedings is required because the ALJ's RFC determination is not supported by substantial evidence.  In particular, Plaintiff contends that the RFC finding is *necessarily* unsupported by substantial

evidence since the record lacks any medical opinion evidence regarding his mental and physical capabilities. Plaintiff contends that remand for this reason is particularly required, where, as here, the ALJ found that he has severe mental impairments.

Defendant opposes Plaintiff's motion for judgment on the pleadings and cross-moves for the same relief, arguing that the ALJ's decision is free of legal error and supported by substantial evidence notwithstanding the fact that the record contains no medical opinion evidence. Defendant also notes that the ALJ could have simply denied Plaintiff's application based on Plaintiff's failure to attend the consultative examinations, pursuant to 20 C.F.R. § 416.918.[4]

The Court has carefully reviewed and considered the parties' submissions and finds, for the reasons discussed below, that Plaintiff's arguments lack merit and that the Commissioner's decision should be affirmed.

## DISCUSSION

The gist of Plaintiff's argument is that an RFC finding that is not supported by medical opinion evidence is necessarily deficient.[5] In support of this argument Plaintiff cites a number of district court decisions.

However, the Second Circuit has made clear that medical opinion evidence is not required, provided that the record contains other evidence from which the ALJ can assess the claimant's RFC. *See, Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020)

---

[4] "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 416.918(a).

[5] *See*, Pl. Memo of Law ECF No. 13-1 at p. 1 ("SUMMARY OF ARGUMENT The [ALJ] erred by failing to rely on opinion evidence while determining the physical and mental portions of the [RFC] determination. This left the decision unsupported by substantial evidence, and remand is required."); *see also, id.* at pp. 7–8 ("[The ALJ] did not assign controlling weight to any opinion, and instead relied on his own lay interpretation of medical evidence to make the RFC. This made both the RFC and decision unsupported by substantial evidence.").

("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Here, the treatment notes were in line with the ALJ's RFC determinations. And because Cook failed to adduce any medical evidence inconsistent with the ALJ's determinations, the ALJ was not faced with "any clear gaps in the administrative record" that gave rise to an affirmative obligation to seek a medical opinion. *See Rosa*, 168 F.3d at 79-80."); *see also, Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where, however, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes)."); *Tanya R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00262 EAW, 2021 WL 3076426, at *4 (W.D.N.Y. July 20, 2021) ("Plaintiff argues that the ALJ was not empowered to interpret raw medical data in crafting the RFC. Notably, this was not a case where the ALJ rejected medical opinion evidence of record contrary to the RFC, but rather, the record lacked any such opinion evidence relating to Plaintiff's mental impairments. But the lack of opinion evidence alone does not necessarily direct remand, as Plaintiff contends. . . . Here, the ALJ expressly addressed Plaintiff's mental health treatment records and noted that Plaintiff did not provide any additional or recent medical evidence of mental health treatment, nor has Plaintiff

11

identified any such records to the Court that the ALJ did not consider or improperly rejected. In addition, the ALJ provided a sufficient explanation for her determination that Plaintiff's mental health limitations were managed by medication and therapy and explained the evidentiary bases for her determination of Plaintiff's RFC. The absence of additional opinion evidence as to Plaintiff's mental impairments does not appear to be the result of an "obvious gap" in the record needing to be filled. The Court concludes that the ALJ was not required to further develop the record in this case, because the evidence of record was 'adequate to permit the ALJ to make a disability determination.' *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). The ALJ had adequate evidence in the record from which she could and did properly assess Plaintiff's RFC. Accordingly, neither reversal nor remand is warranted.") (citation omitted).

Consequently, to the extent Plaintiff contends that remand is necessarily required based on the lack of medical opinion evidence, the argument lacks merit.

Plaintiff further contends that the ALJ should have developed the record by "order[ing] consultative examinations." Tr. 12. However, Plaintiff failed to attend his scheduled consultative examinations and offered no explanation. Moreover, there was no obvious gap in the record.

Plaintiff also contends that it is unclear how the ALJ arrived at his RFC determination, and that "there was no useful assessment of Plaintiff's functioning in the record." However, the Court disagrees and finds both that the ALJ adequately discussed the evidence he relied upon when making his RFC determination, and that such evidence is substantial. Moreover, Plaintiff points to no evidence in the record to suggest that he is more limited than what the ALJ found.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 13) for judgment on the

pleadings is denied, Defendant's cross-motion (ECF No. 14) for the same relief is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and to close this action.

    So Ordered.

Dated: Rochester, New York
      August 27, 2021

                        ENTER:

                        _____
                        CHARLES J. SIRAGUSA
                        United States District Judge